Officer Joshua Hastings Little Rock Police Department
700 West Markham Little Rock, Arkansas 72201
Dear Officer Hastings:
I am writing in response to your request, made pursuant to the Arkansas Freedom of Information Act (the "FOIA"), [1] for my opinion regarding the propriety of the provisional decision of the Little Rock Police Department's custodian of records to release certain records relating to a disciplinary action against you. The requester is seeking copies of the records generated in an internal affairs investigation that led to your suspension. You object to the release of this file, maintaining that it "contains employee/supervisor evaluations that are not releasable under the FOIA" and that you believe "the file will [be] used by some to harass me at my work place and will bring undue criticism to me and my family." I have been provided a copy of the closed file for review. The time for you to file an administrative appeal of your suspension has passed.
RESPONSE
Based upon my review of the material provided, I concur with the custodian in his provisional decision to release the requested material.
The FOIA provides for the disclosure upon request of certain "public records," which the Arkansas Code defines as follows: *Page 2 
 "Public records" means writings, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium required by law to be kept or otherwise kept and that constitute a record of the performance or lack of performance of official functions that are or should be carried out by a public official or employee, a governmental agency, or any other agency or improvement district that is wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.[2]
The requester seeks disclosure of documents "that meet any of the following criteria":
 • Failure to respond to radio request. (Toning)
 • Untruthfulness during the course of an Internal Affairs investigation.
 • Officer Josh Hasting[s'] #29383 disciplinary actions for exceeding the 85 mph speed barrier as set forth by Patrol Divisional Operating Procedures.
Because you are a city employee, I believe the requested documents that relate to you are clearly "public records" under the definition set forth above. However, the FOIA provides for certain exemptions from the disclosure of public records, the most pertinent of which exempts under specified circumstances employee evaluations and job performance records.
"Employee evaluation or job performance records" are releasable only if certain conditions have been met. The Code provides in pertinent part:
 [A]ll employee evaluation or job performance records, including preliminary notes and other materials, shall be open to public inspection only upon final administrative resolution of any suspension or termination proceeding at which the records form a *Page 3 
basis for the decision to suspend or terminate the employee and if there is a compelling public interest in their disclosure.[3]
The FOIA does not define the term "employee evaluation or job performance records" as used in this statute, nor has the phrase been construed judicially. This office has consistently taken the position that any records that were created by or at the behest of the employer and that detail the performance or lack of performance of the employee in question with regard to a specific incident or incidents are properly classified as employee evaluation or job performance records.[4] The record must also have been created for the purpose of evaluating an employee.[5] The exemption promotes candor in a supervisor's evaluation of an employee's performance with a view toward correcting any deficiencies.[6] In my opinion, with the few exceptions noted below, the documents I have been provided for review clearly qualify as employee evaluation/job performance records.
The FOIA at no point defines the phrase "compelling public interest" as used in the final prong of the test for disclosure set forth above. However, two leading commentators on the FOIA, referring to this office's opinions on this issue, have offered the following guidelines:
 [I]t seems that the following factors should be considered in determining whether a compelling public interest is present: (1) the nature of the infraction that led to suspension or termination, with particular concern as to whether violations of the public trust or gross incompetence are involved; (2) the existence of a public controversy related to the agency and its employees; and (3) the employee's position within the agency. In short, a general interest in the performance of public employees should not be considered compelling, for that concern is, at least theoretically, always present. However, a link between a given public controversy, an agency associated with the controversy in a specific way, and an employee *Page 4 
within the agency who commits a serious breach of public trust should be sufficient to satisfy the compelling public interest requirement.[7]
Professors Watkins and Peltz also note that the status of the employee or his rank within the bureaucratic hierarchy may be relevant in determining whether a compelling public interest exists.[8]
With respect to allegations of police misconduct, I have previously noted as follows:
 I and my predecessors have previously stated . . . on this general topic that a compelling public interest likely exists in information reflecting a violation of departmental rules by a cop on the beat in his interactions with the public. See Op. Att'y Gen. 2006-106. If the prior disciplinary records reflect a suspension based on this type of infraction, a strong case for the finding of a compelling public interest exists.[9]
However, the existence of a compelling public interest in disclosure will necessarily depend upon all of the surrounding facts and circumstances.
In the present case, I concur in the custodian's provisional decision to disclose the employee evaluation/job performance records contained in the investigative file. These records formed a basis for your suspension, the time to pursue administrative remedies has passed and a compelling public interest exists in disclosure. With regard to this last prong of the applicable test, the custodian's *Page 5 
provisional decision is mandated by the compelling public interest in disclosure of police misconduct that involves interactions with the public. Without belaboring the specifics, I will note that the investigative file reflects that your suspension was based upon violations of departmental rules that directly implicated the public safety, thus warranting disclosure in this instance.
Having reviewed the investigative file, I believe all but two of the documents included qualify as employee evaluation/job performance records subject to disclosure under the standard set forth above. The two minor exceptions are intra-departmental e-mails relating to the dates of your suspension. In my opinion, these two documents are "personnel records," as distinct from "employee evaluation/job performance records," and are clearly subject to disclosure.
Under the FOIA, personnel records are open to public inspection and copying except to the extent that disclosure would constitute a clearly unwarranted invasion of personal privacy.[10] The FOIA does not define the term "personnel records." The Attorney General has consistently taken the position that personnel records are all records other than employee evaluation and job performance records that pertain to individual employees, former employees, or job applicants.[11]
The FOIA likewise does not define the phrase "clearly unwarranted invasion of personal privacy." However, the Arkansas Supreme Court has construed the phrase. In determining which disclosures constitute a clearly unwarranted invasion of personal privacy, the court applies a balancing test, weighing the interest of the public in accessing the records against the individual's interest in keeping the records private.[12] If the public's interest outweighs the individual's interest, the release of the records will not constitute a clearly unwarranted invasion of personal privacy. If there is little public interest in the information, the privacy interest will prevail if it is not insubstantial.[13] As the court noted in Young: *Page 6 
 The fact that section 25-19-105(b)(10) [now subsection 105(b)(12)] exempts disclosure of personnel records only when a clearly unwarranted personal privacy invasion would result, indicates that certain warranted privacy invasions will be tolerated. Thus, section 25-19-105(b)[12] requires that the public's right to knowledge of the records be weighed against an individual's right to privacy. . . . Because section 25-19-105(b)[10] allows warranted invasions of privacy, it follows that when the public's interest is substantial, it will usually outweigh any individual privacy interests and disclosure will be favored.[14]
However, as the court noted in Stilley, when there is little relevant public interest in disclosure, it is sufficient under the circumstances to observe that the employee's privacy interest in nondisclosure is not insubstantial.[15] Given that exemptions from disclosure must be narrowly construed, it is the burden of an individual resisting disclosure to establish that his privacy interests outweighed that of the public's under the circumstances presented.[16] The fact that the subject of any such records may consider release of the records an unwarranted invasion of personal privacy is not relevant to the analysis.[17] The test is an objective one.[18] The question of whether the release of any particular personnel record would constitute a clearly unwarranted invasion of personal privacy is always a question of fact to be determined by the custodian of records.[19]
In the present case, two e-mails that merely reflect the fact and dates of a suspension clearly constitute personnel records that are subject to disclosure under the applicable test.[20] I see no privacy interest that would support denying the *Page 7 
disclosure of the dates of a suspension whose length and conditions are independently subject to disclosure under the standard applicable to employee evaluation/job performance records. Even assuming that a record disclosing the mere fact of your suspension might be exempt from disclosure — an assumption at odds with the just recited authority — any cognizable privacy interest you might have in not publicizing the fact of your suspension is obviated by disclosure of the remainder of the investigative file.
The investigative file contains the names of various other officers who were tangentially involved in the events giving rise to your suspension. The records naming these officers are properly classified as their personnel records, as well as your employee evaluation/job performance records. As such, with respect to these other officers, the records are subject to the test just outlined. In my opinion, based upon my review of the file, disclosing the names of these officers would in no way implicate their personal privacy in a manner that might support nondisclosure.
In addition, I do not believe that either you or any party identifiable from any of the requested records might have a constitutionally protected privacy interest in those records. The Arkansas Supreme Court has recognized that the constitutional right of privacy can supersede the specific disclosure requirements of the FOIA, at least with regard to the release of documents containing constitutionally protectable information.[21] I do not believe any such constitutional right is implicated in this instance.
I further feel obliged to comment on the disclosability of a letter of suspension contained in the investigative file. A letter of suspension or dismissal may or may not qualify as an "employee evaluation/job performance record" subject to the standard of review set forth above. This office has consistently opined that a letter of suspension or termination that details the reasons for the disciplinary action is an employee evaluation or job performance record for purposes of the FOIA.[22] However, if correspondence merely announces the fact of the termination, the custodian should determine its disclosability under the FOIA using the standard *Page 8 
for the disclosure of personnel records. Under the present circumstances, I believe the suspension letter, which specifies and discusses the reasons for the disciplinary action, is an evaluation record that is clearly subject to disclosure.
Finally, I will address the disclosability of various references in the investigative file to a previous disciplinary incident. The custodian has apparently decided not to disclose the investigative file relating to this previous incident, presumably because it did not result in a suspension from or termination of your employment. Assuming that no suspension resulted from the previous incident, I concur in the custodian's decision not to disclose the investigative file relating to that incident. However, I believe the references to the previous incident contained in the investigative file I have been provided are subject to disclosure under the above recited standard applicable to employee evaluation/job performance records. Without venturing into details, I will note that the previous incident also involved a breach of departmental policy that implicated public safety. As reflected in the file I have been supplied, the occurrence of this previous incident served in part as a basis for the disciplinary action reflected in the 10-day suspension that resulted in the wake of the second incident. Accordingly, I believe the references to the previous incident in the file I have been provided are disclosable as employee evaluation/job performance records with respect to the second incident that resulted in your suspension.
In addition to the exemptions discussed above, various types of information are subject to possible redaction prior to disclosure of a record. Because the file I have been provided contains no such information, I will refrain from here detailing what types of information might generally be subject to such redaction.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] The FOIA is codified at A.C.A. §§ 25-19-101 — 110 (Repl. 2002 and Supp. 2011). The specific authorization to request my review of the custodian's provisional decision to release documents is codified at A.C.A. § 25-19-105(c)(3)(B)(i) (Supp. 2011).
[2] A.C.A. § 25-19-103(5)(A) (Supp. 2011).
[3] A.C.A. § 25-19-105(c)(1) (Supp. 2011).
[4] See, e.g., Ops. Att'y Gen. Nos. 2011-078; 2009-210; 2009-067; 2008-004; 2007-225; 2006-111; 2006-038; 2006-035; 2005-030; 2004-211; 2003-073; 98-006; 97-222; 95-351; 94-306; 93-055.
[5] See, e.g., Ops. Att'y Gen. Nos. 2011-078; 2008-004; 2006-038; 2004-012.
[6] See J. Watkins R. Peltz, The Arkansas Freedom ofInformation Act (5th ed., Arkansas Law Press 2009), at 204.
[7] Id. at 217-18 (footnotes omitted).
[8] Id. at 216 (noting that, "[a]s a practical matter, such an interest is more likely to be present when a high-level employee is involved than when the [records] of `rank-and-file' workers are at issue").
[9] Op. Att'y Gen. No. 2009-067. With respect to records generated in the course of an internal affairs investigation, one of my predecessors noted the following in Op. Att'y Gen. No. 2007-025:
 My predecessors have consistently opined that records in an internal affairs file that have been generated at the behest of an employer in the course of investigating a complaint against an employee constitute `employee evaluation/job performance records' within the meaning of the FOIA. See
Ops. Att'y Gen. 2006-106; 2005-267; 2005-094; 2004-178; 2003-306; and 2001-063. It has been opined, however, that [d]ocuments not created in the evaluation process do not come within the rationale behind the 25-19-105(c)(1) exemption. See Op. Att'y Gen. 2007-025; 2005-267, citing Op. Att'y Gen. 2005-094.
[10] A.C.A. § 25-19-105(b)(12) (Supp. 2011).
[11] See, e.g., Op. Att'y Gen. No. 1999-147.
[12] See Young v. Rice, 308 Ark. 593, 826 S.W.2d 252 (1992).
[13] Stilley v. McBride,332 Ark. 306, 965 S.W.2d 125 (1998).
[14] 308 Ark. at 598.
[15] 332 Ark. at 312.
[16] Id. at 313.
[17] See Ark. Ops. Att'y Gen. Nos. 2001-112; 2001-022; 94-198; 94-178; and 93-055.
[18] See, e.g., Ark. Op. Att'y Gen. Nos. 96-133.
[19] Ops. Att'y Gen. Nos. 2008-025; 2004-260; 2003-336; 2003-201; 2001-101; 98-001.
[20] See Op. Att'y Gen. No. 2007-323 ("If . . . a letter does no more than reflect the fact of termination, without elaboration, in my opinion it is properly classified as a "personnel record" under A.C.A. § 25-19-105(b)(12) and is subject to release under the test for release of that category of records. See, e.g., Op. Att'y Gen. 2006-147."). Accord J. Watkins R. Peltz,supra at 207.
[21] See McCambridge v. City of Little Rock,298 Ark. 219, 766 S.W.2d 909 (1989). The McCambridge court held that a constitutional privacy interest applies to matters that: (1) an individual wants to and has kept confidential; (2) can be kept confidential but for the challenged governmental action in disclosing the information; and (3) would be harmful or embarrassing to a reasonable person if disclosed. Id. at 230.
[22] See, e.g., Ark. Ops. Att'y Gen. Nos. 2006-026 and 95-171 (relying on Ark. Ops. Att'y Gen. Nos. 92-191 and 88-97).

 *Page 1